ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
       wncarlon@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, <br><br> Plaintiff, <br><br> v. <br><br> CANYON ROCK CO., INC. AND WENDELD TRAPPE, <br><br> Defendants. | Case No: 3:20-cv-00615-JCS <br><br> **STIPULATION TO DISMISS CLAIMS WITH PREJUDICE; [~~PROPOSED~~] ORDER GRANTING DISMISSAL WITH PREJUDICE [FRCP 41(a)(2)]** |

Plaintiff California Sportfishing Protection Alliance ("CSPA") and Defendants CANYON ROCK, CO., INC. AND WENDEL TRAPPE ("Defendants") in the above-captioned action, stipulate as follows:

WHEREAS, on or about November 26, 2019, CSPA provided Defendants with a Notice of Violations and Intent to File Suit ("CWA 60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act ("Act" or "Clean Water Act"), 33 U.S.C. § 1365;

WHEREAS, on January 27, 2020, CSPA filed its Complaint against Defendants in this Court and said Complaint incorporated by reference all of the allegations contained in CSPA's CWA 60-Day Notice Letter;

WHEREAS, CSPA and Defendants, through their authorized representatives and without either adjudication of CSPA's claims or admission by Defendants of any alleged violation or

| | |
|---|---|
| Stipulation and Order Re Dismissal | Case No: 3:20-cv-00615-JCS |

other wrongdoing, have chosen to resolve in full by way of consent decree the allegations of CSPA as set forth in CSPA's CWA 60-Day Notice Letter and Complaint, thereby avoiding the costs and uncertainties of further litigation.  A copy of the Parties' proposed consent decree ("Consent Decree") entered into by and between CSPA and Defendants is attached hereto as **Exhibit A** and incorporated by reference;

WHEREAS, CSPA has submitted the Consent Decree via certified mail, return receipt requested, to the U.S. EPA and the U.S. Department of Justice, and the U.S. Department of Justice has now filed their "Non-Opposition to Consent Judgment" (ECF No. 34);

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the Parties that CSPA's claims as set forth in its CWA 60-Day Notice Letter and Complaint, be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).  The Parties respectfully request an order from this Court dismissing such claims with prejudice.  In accordance with Section III, Paragraph 1 of the Consent Decree, the Parties also request that this Court retain and have jurisdiction over the Parties through November 30, 2021, for the sole purpose of resolving any disputes between the Parties with respect to enforcement of any provision of the Consent Decree.

Dated: December 14, 2020        Respectfully submitted,
                                LAW OFFICES OF ANDREW L. PACKARD

                                By: /s/ Andrew L. Packard
                                Andrew L. Packard
                                Attorneys for Plaintiff
                                California Sportfishing Protection Alliance

Dated: December 14, 2020        HARRISON TEMBLADOR HUNGERFORD & JOHNSON

                                By: /s/ Sean Hungerford
                                Sean Hungerford
                                Attorneys for Defendants

**ATTESTATION FOR E-FILING**

I hereby attest pursuant to Civil L.R. 5-1(i)(3) that I have obtained concurrence in the filing of this document from the other Signatory prior to filing.

Dated: December 14, 2020                    By: /s/ Andrew L. Packard

# [PROPOSED] ORDER

Good cause appearing, and the Parties having stipulated and agreed,

IT IS HEREBY ORDERED that Plaintiff California Sportfishing Protection Alliance claims against Defendants, as set forth in CSPA's CWA 60-Day Notice Letter and Complaint, are hereby dismissed with prejudice, each side to bear their own attorney fees and costs, except as provided for by the terms of the accompanying Consent Decree.

IT IS FURTHER ORDERED that the Court shall retain and have jurisdiction over the Parties with respect to disputes arising under the Consent Decree attached to the Parties' Stipulation to Dismiss as **Exhibit A,** until February 28, 2023.

IT IS SO ORDERED.


Dated:  12/15/2020                          _____
                                            HON. JOSEPH C. SPERO
                                            UNITED STATES DISTRICT COURT JUDGE

Stipulation and Order Re Dismissal                          Case No: 3:20-cv-00615-JCS

**EXHIBIT A**

ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel:  (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
          wncarlon@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>                              Plaintiff,<br><br>       vs.<br><br>CANYON ROCK, CO., INC., AND WENDEL TRAPPE,<br><br>                              Defendants. | Case No. 3:20-CV-00615-JCS<br><br>**[PROPOSED] CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387)** |

**WHEREAS**, Plaintiff California Sportfishing Protection Alliance (hereinafter "CSPA") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of California's waters;

**WHEREAS**, Defendants Canyon Rock, Co., Inc. and Wendel Trappe (collectively hereinafter "Canyon Rock" or "Defendants") own and/or operate an approximately 80-acre facility in Forestville, and a 120-acre facility in Cazadero (hereinafter referred to as the "Forestville Facility" and the "Cazadero Facility" respectively);

**WHEREAS**, Defendants' primary industrial activities at the Facilities include, but are not limited to rock quarrying, aggregate and rock material crushing, processing, screening, stockpiling and producing ready-mix concrete.

**WHEREAS,** site maps of the Forestville and Cazadero Facilities are attached hereto as

**Exhibits A** and **B**, respectively, and incorporated herein by reference;

      **WHEREAS,** CSPA and Defendants collectively shall be referred to as the "Parties;"

      **WHEREAS**, the Forestville Facility collects and discharges storm water from the Facility into Green Valley Creek, which is a tributary of the Russian River;

      **WHEREAS**, the Cazadero Facility collects and discharges storm water from the Facility into Austin Creek, which is a tributary of the Russian River;

      **WHEREAS**, storm water discharges associated with industrial activity are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, State Water Resources Control Board ("State Board") Water Quality Order No. 14-57-DWQ, issued pursuant to Section 402(p) of the Clean Water Act ("Act"), 33 U.S.C. §1342(p), (hereinafter "General Permit") and, prior to July 1, 2015, were regulated by Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order 92-12-DWQ and 97-03-DWQ;

      **WHEREAS**, on or about November 26, 2019, Plaintiff provided notice of Defendants' violations of the Act ("Clean Water Act Notice Letter"), and of its intention to file suit against Defendants to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the U.S. Attorney General; the Executive Director of the State Board; the Executive Officer of the Regional Water Quality Control Board, North Coast Region ("Regional Board"); and to Defendants, as required by the Act, 33 U.S.C. § 1365(b)(1)(A) (a true and correct copy of CSPA' Clean Water Act Notice Letter is attached hereto as **Exhibit C** and incorporated herein by reference);

      **WHEREAS**, Defendants deny the occurrence of the violations alleged in the Clean Water Act Notice Letter and maintain that Canyon Rock has complied at all times with the provisions of the General Permit and the Clean Water Act and there are no "ongoing and continuous" violations of the General Permit or the Act;

      **WHEREAS**, the Parties agree that it is in their mutual interest to resolve this matter as to all entities and persons named in the Clean Water Act Notice Letter without litigation and enter into this Consent Decree ("Decree");

      **WHEREAS**, on or about January 27, 2020, CSPA filed a complaint against Defendants in the

United States District Court, Northern District of California (this matter is hereinafter referred to as "the Action");

**WHEREAS**, the parties agree that Defendants entering into this Decree is not any admission of liability by Defendants regarding the claims made by Plaintiff in the Action, and compliance with this Decree shall not be deemed to be compliance with the General Permit or the Clean Water Act;

**WHEREAS**, within five (5) calendar days of mutual execution, this Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c);

**AND WHEREAS**, within ten (10) calendar days of expiration of the statutory review period, or the earlier receipt of non-objection from the United States Department of Justice, Plaintiff shall file with the Court a Stipulation and Proposed Order that shall provide that the Clean Water Act claims therein shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) concurrently with the District Court's retention of jurisdiction for the enforcement of this Decree as provided herein (the date of entry of the Order to dismiss the Clean Water Act claims shall be referred to herein as the "Court Entry Date").

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES, AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

For the purposes of this Consent Decree, the Parties agree that:

(a) the Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

(b) venue is appropriate in the United States District Court for the Northern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

(c) the Complaint states claims upon which relief may be granted against Defendants pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365;

(d) Plaintiff has standing to bring this action; and,

(e) the Court shall retain jurisdiction over this matter for purposes of interpreting, modifying,

or enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

I.    **COMMITMENTS OF DEFENDANTS**

1.    **Compliance with General Permit and the Clean Water Act.**  Throughout the term of this Decree, Canyon Rock shall implement all measures needed to operate the Facilities in compliance with the requirements of the General Permit and the Clean Water Act, subject to any defenses available under the law.  The Parties understand and agree that compliance with the General Permit and the Clean Water Act requires that Canyon Rock eliminate all unauthorized non-storm water discharges, including but not limited to process waters generated by the Facilities wash plant, by the washing of materials or vehicles, or by the concrete batch plant, and that the occurrence of any such discharges shall be subject to the dispute resolution procedures set forth in Section III below, including the assessment of civil penalties in an amount to be determined by the Court.

2.    **Implementation of Specific Storm Water Best Management Practices.**  In addition to any existing and appropriate Best Management Practices ("BMPs"), Canyon Rock shall implement and incorporate into the Facilities' Storm Water Pollution Prevention Plans ("SWPPPs") the following storm water source control measures and BMPs at the Facilities by **November 15, 2020** (unless otherwise indicated):

    *(a)    Mandatory Minimum Best Management Practices.*  Canyon Rock shall implement all mandatory minimum BMPs set forth in Section X.H of the General Permit;

    *(b)    Forestville Facility -- Revised BMPs.*  Canyon Rock shall implement the following structural and non-structural BMPs:

        1.  Improvements to Wash Plant Area (See **Exhibit D**):

            i.    **Prohibition of Non-Storm Water Discharges**. Canyon Rock shall not discharge any non-storm water of any type from the wash plant to any location where such waters might enter Pond 5 as shown on **Exhibit D** or otherwise commingle with storm water and discharge from the Forestville Facility. Canyon Rock shall ensure that the wash plant operates on a "closed

- 4 -

circuit" and that all such water is captured and reused or recycled.  In addition to the compliance monitoring inspections provided for below, CSPA shall have the opportunity, upon reasonable notice, to inspect the Forestville Facility to verify that there are no non-storm water flows entering Pond 5 on **Exhibit D** or otherwise discharging from the Forestville Facility.

ii.  **Overflow Monitor**.  By no later than **November 15, 2020**, Canyon Rock shall add a water-level monitor to the horizontal wash plant recycling tank that triggers a pump shut off in the event that the tank is full and near the overflow point.

iii.  **Berm Improvements at Pond 5 On Exhibit D.**  By no later than **November 30, 2020**, Canyon Rock shall improve the berm surrounding the perimeter of Pond 5 on **Exhibit D**.  The improvements shall be sufficient to prevent any process/wash waters, which are unauthorized non-storm water discharges under the General Permit, from entering and commingling with storm water flows to, or discharges from, Pond 5 on **Exhibit D**.  Captured water shall be reused in wash plant operations to the extent possible.

iv.  **Roofing and Curtain Structure Over Filter Press.**  By no later than **December 31, 2020**, Canyon Rock shall install a roof covering and curtain structure over the Plate Press Station as shown on **Exhibit D**, and pursuant to the preliminary construction drawings attached thereto.  Canyon Rock shall also amend its SWPPP to require the immediate removal of all pressed sediment cakes at any time the Plate Press Station bunker capacity is exceeded. This roofing and curtain structure shall be sufficient to prevent all process/wash waters from commingling with storm water prior to discharge from the Facility.

2. Improvements at the Truck Wash Station (See **Exhibit E**):

i.   **New Storm Water Collection Basin And Truck Wash Area.** By no later than **July 1, 2021**, Canyon Rock shall modify its truck and vehicle wash station as shown on **Exhibit E**. These modifications shall consist of: devoting existing truck wash basins solely to capturing storm water which shall be pumped to the wet pond in Drainage Area 2; installation of a two (2) stall bermed concrete washout pad and associated storage tank and BMPs, including measures to prevent any process/wash waters from commingling with storm water (see Notes on Exhibit E for alternative option for location of storage tank and BMPs, if first option location is unsuitable, if agreed by the Parties).  Water collected in the vehicle-washing pad will be pumped to the associated tank for reuse or recycling and shall not discharge from the Facility.

3.   Improvements at the Concrete Batch Plant (See **Exhibit F**):

i.   **Berm at Concrete Batch Plant.**  By no later than November 30, 2020, Canyon Rock shall install a permanent berm around the northern end at the concrete batch plant and its associated basin to redirect storm water run-on around the plant as shown on **Exhibit F**.  Canyon Rock shall also install any such other berms around the concrete batch plant as required to prevent any process/wash waters from commingling with storm water.

4.   Improvements to Boneyard (See **Exhibit G**):

i.   **Pollutant Source Reduction at Bone Yard.**  By no later than November 30, 2020, Canyon Rock shall perform a survey of the boneyard to identify rusting materials that no longer have value, shall remove those materials, and shall consolidate the remaining materials in the smaller area identified on **Exhibit G**.  By way of confirmation, Canyon Rock further agrees to document, with photographs, all materials slated for removal from the Facility, and all materials to be retained in the new, smaller bone yard area.

ii.    **Berm at Bone Yard.**  Canyon Rock shall install a structural berm at the downgradient edge of the boneyard to control and filter runoff, as shown on **Exhibit G**.  All storm water flows from the bone yard area designated in **Exhibit G** shall be directed through Filtrexx® FilterSoxx with MetaLoxx, which are designed to remove undissolved metals.

(c)    *Cazadero Facility -- Revised BMPs.*  Canyon Rock shall implement the following structural and non-structural BMPs:

1.    **Diversion of Run-On to New Detention Basin.**  By no later than **January 31, 2021**, Canyon Rock shall divert all run-on in Drainage Area 2 to a new retention basin designed to prevent commingling of such run-on with any storm water associated with industrial activity.  This diversion shall be accomplished by installing piping or its functional equivalent, to route the run-on around the existing retention basin in Drainage Area 2.

2.    **Relocation of Sample Point CRC-2**.  By no later than **January 31, 2021**, Canyon Rock shall relocate sample point "CRC-2" to the existing retention basin's outfall, as shown on **Exhibit H.**

(d)    *Both Facilities -- Revised BMPs.*  Canyon Rock shall implement the following additional structural and non-structural BMPs:

1.    **Above Ground Storage Tanks ("ASTs") – Designation on SWPPP, Implementation of Secondary Containment.**  By no later than **November 15, 2020**, Canyon Rock shall ascertain the location and contents of all ASTs on each Facility and identify this information in the revised SWPPPs and revised SWPPP maps as per Section X.E(3) of the General Permit.  By no later than **November 15, 2020**, Canyon Rock shall provide CSPA with a declaration signed under penalty of perjury and confirming that all ASTs on each Facility containing petroleum substances have secondary containment meeting the requirements of 40 CFR § 112.8(c)(2).

2.  **Spill Kits**.  By no later than November 15, 2020, Canyon Rock shall identify the locations of all spill kits at each Facility in the revised SWPPPs and revised SWPPP maps, as depicted in the Spill Prevention Control and Countermeasures Plan for each Facility, which shall be appended to each Facility SWPPP.

3.      **SWPPP Amendments.**  On or before November 15, 2020 Defendants shall amend both Facility SWPPPs to incorporate all of the relevant requirements of this Decree and the General Permit.  These revisions shall reflect all then-current site conditions and practices and identify potential contaminants of concern, identify the location of all pervious and impervious areas, drop inlets, BMPs, and storm water flow vectors.  These revisions shall also provide for required data logging; weekly monitoring and maintenance of all Facility collection and discharge points during the Wet Season; and the twice-annual storm water management training for Facility employees referenced above.

4.      **Facility Mapping**.  On or before November 15, 2020, Defendants agree to revise the Site Maps appended to the current SWPPPs to comply with all of the requirements in Section X.E.1-3 of the General Permit and for use in documenting this Decree. The Site Maps shall identify the location of all above ground storage tanks (ASTs) containing fuels, in accordance with the General Permit.

5.      **Sampling Frequency.**   For the 2020-2021 and 2021-2022 reporting years ending June 30th (2021 and 2022), Defendants shall collect and analyze samples at each Facility from three (3) Qualifying Storm Events[1] ("QSEs") within the first half of each reporting year (July 1 to December 31), and three (3) QSEs within the second half of each reporting year (January 1 to June 30).  In the event that Defendants are successful in properly collecting and analyzing three QSEs in the first half of the reporting year, they may elect to reduce their sampling frequency to two (2) samples for the second half of that reporting year.  All samples taken and analyzed for the purposes of compliance with this agreement shall be uploaded to SMARTS. The storm water sample results shall be compared

---

[1] A Qualifying Storm Event (QSE) is defined in the General Permit as a precipitation event that: (a) produces a discharge from at least one drainage area; and (b) is preceded by 48 hours with no discharge from any drainage area.  *See* General Permit, Section XI(b)(1).

with the values set forth in **Exhibit I**, attached hereto, and incorporated herein by reference.  If the results of any such samples exceed the parameter values set forth in **Exhibit I**, Defendants shall comply with the "Action Memorandum" requirements set forth below.

6.    **Sampling Parameters.**  All samples shall be analyzed for each of the constituents listed in **Exhibit I**, including TMDLs, as applicable, by a laboratory accredited by the State of California.  All samples shall be delivered to the laboratory as soon as possible to ensure that sample "hold time" is not exceeded.  Analytical methods used by the laboratory shall comply with General Permit requirements in regards to both test method and detection limit.  See General Permit, Table 2, at 43.  Sampling results shall be provided to CSPA within thirty (30) days of Defendants' receipt of the laboratory report from each sampling event, pursuant to the Notice provisions below.

7.    **"Action Memorandum" Trigger; CSPA Review Of "Action Memorandum"; Meet-and-Confer.**  If any sample taken during the two (2) reporting years referenced in Paragraph 4 above exceeds the Evaluation Levels set forth in **Exhibit I**, or if Defendants fail to properly collect and analyze samples from the required number of QSEs, then Defendants shall prepare a written statement discussing the exceedance(s) and/or failure to collect and analyze required samples, the possible cause and/or source of the exceedance(s), and additional measures that will be taken to address and eliminate future exceedances and/or failures to collect required samples ("Action Memorandum").

The Action Memorandum shall be provided to CSPA not later than July 15 following the conclusion of each reporting year, on July 15, 2021 and July 15, 2022.  Additional measures may include, but are not limited to, further material improvements to the storm water collection and discharge system, changing the type and frequency of Facility sweeping, changing the type and extent of storm water filtration media or modifying other industrial activities or management practices at the Facility.   Any additional measures, to the extent feasible, shall be implemented immediately and in no event later than sixty (60) days after the due date of the Action Memorandum.  Within thirty (30) days of implementation, the Facility SWPPP shall be amended to include all additional BMP measures designated in the Action Memorandum.  CSPA may review and comment on an Action Memorandum and suggest any additional pollution prevention measures it believes are appropriate; however,

CSPA's failure to do so shall not be deemed to constitute agreement with the proposals set forth in the Action Memorandum. Upon request by CSPA, Defendants agree to meet and confer in good faith (at the Facility, if requested by Plaintiff) regarding the contents and sufficiency of the Action Memorandum.

8. **Increased Employee Training**. Canyon Rock shall increase training for Canyon Rock's Storm Water Pollution Prevention Team ("SWPPT"), including holding one training meeting in January and one training meeting in October of each year. Canyon Rock will incorporate the holding of these twice-annual meetings in its new SWPPP. Canyon Rock shall target training on tracking what storm events qualify for sampling purposes, undertaking visual monitoring, and logging and properly reporting data in the Facility's SWPPP, Annual Report and the State's on-line reporting system ("SMARTS"). Canyon Rock shall log these meetings with the date, materials covered, written agenda, and a list of attendees for each, and shall retain these logs with each Facility's SWPPP. Canyon Rock shall have at least one member of the SWPPT, that meets the certification qualifications, be formally certified as a Qualified Industrial Storm Water Practitioner ("QISP").

9. **Inspections During The Term Of This Decree.** In addition to any site inspections conducted as part of the settlement process and the meet-and-confer process concerning an Action Memorandum as set forth above, Defendants shall permit representatives of CSPA to perform up to two (2) physical inspections of each Facility during the term of this Decree. These inspections shall be performed by CSPA' counsel and consultants and may include sampling, photographing, and/or videotaping and CSPA shall provide Defendants with a copy of all sampling reports, photographs and/or video. CSPA shall provide at least seventy-two (72) hours advance notice of such physical inspection, except that Defendants shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations or any party/attorney, or the safety of individuals. In such case, Defendants shall specify at least three (3) dates within the two (2) weeks thereafter upon which a physical inspection by CSPA may proceed. Defendants shall not make any alterations to Facility conditions during the period between receiving CSPA' initial seventy-two (72) hour advance notice and the start of CSPA' inspection that Defendants would not otherwise have made but for receiving notice of CSPA' request to conduct a physical

inspection of the Facility, excepting any actions taken in compliance with any applicable laws or regulations. Nothing herein shall be construed to prevent Defendants from continuing to implement any BMPs identified in the SWPPP during the period prior to an inspection by CSPA or at any time.

10. **Communications To/From Regional and State Water Boards.** During the term of this Decree, Canyon Rock shall provide CSPA with courtesy copies of all documents submitted to, or received from, the Regional Water Board or the State Water Board concerning storm water discharges from the Facilities, including, but not limited to, all documents and reports submitted to the Regional Water Board and/or State Water Board as required by the current General Permit. Such documents and reports shall be provided to CSPA via email pursuant to the Notice provisions set forth below and contemporaneously with Canyon Rock's submission(s) to, or, receipt from, such agencies.

11. **SWPPP Amendments.** Pursuant to the Notice provisions set forth below, Defendants shall provide CSPA with a copy of any amendments to the Facility SWPPP made during the term of the Decree within fourteen (14) days of such amendment.

II. <u>**MITIGATION, COMPLIANCE MONITORING, AND FEES AND COSTS**</u>

12. **Mitigation Payment In Lieu Of Civil Penalties Under the Clean Water Act.** As mitigation to address any potential harms from the Clean Water Act violations alleged in the Action, Defendants agree to pay the sum of seventy-five thousand dollars ($75,000) to the Rose Foundation for Communities and the Environment for projects to improve water quality in the Russian River watershed. Such mitigation payment shall be remitted directly to the Rose Foundation at: Rose Foundation, Attn: Tim Little, 201 4th Street, Suite 102, Oakland, CA 94607-4369 within ten (10) days after the Court Entry Date.

13. **Compliance Monitoring Funding.** To defray CSPA' reasonable investigative, expert, consultant and attorneys' fees and costs associated with monitoring Defendants' compliance with this Decree, Defendants agree to pay the sum of twenty-two thousand five hundred dollars ($22,500) to a compliance monitoring fund maintained by counsel for CSPA as described below. Payment shall be made payable to the "Law Offices of Andrew L. Packard Attorney-Client Trust Account" and remitted to Plaintiff's counsel at the Notice address provided herein within ten (10) days after the Court Entry Date. Compliance monitoring activities may include, but shall not be limited to,

- 11 -

site inspections, review of water quality sampling reports, review of annual reports, and discussions

with Defendant concerning the ERA reporting requirements of the General Permit.  Compliance

monitoring funds shall not be used to pay attorney's fees and costs associated with negotiating any

amendments to this Decree; the recovery of any such fees or costs shall be addressed in the

amendment to this Decree.

       **14.**      **Reimbursement of Fees & Costs.**  Defendants agree to reimburse CSPA in the

amount of seventy thousand dollars ($70,000) to defray CSPA' reasonable investigative, expert,

consultant, and attorneys' fees and costs, and all other costs incurred as a result of investigating the

activities at the Facility, bringing the action, and negotiating a resolution of this action in the public

interest.  Payment shall be made payable to the "Law Offices of Andrew L. Packard Attorney-Client

Trust Account" and remitted to Plaintiff's counsel at the Notice address provided herein within ten

(10) days after the Court Entry Date.

**III.**    <u>**DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE**</u>

       **15.**      If a dispute under this Decree arises, or either Party believes that a breach of this

Decree has occurred, the Parties shall meet and confer within seven (7) days of receiving written

notification from the other Party of a request for a meeting to determine whether a breach has occurred

and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.  If

either Party believes that a wet or dry site inspection is necessary to resolve the dispute, such

inspection shall be scheduled pursuant to the provisions of Section II.10 herein but shall not count

against the three regular compliance inspections provided by that section.  If the Parties fail to meet

and confer, or the meet-and-confer does not resolve the issue, after at least seven (7) days have passed

after the meet-and-confer occurred or should have occurred (which may be extended for inspection

purposes), either Party shall be entitled to all rights and remedies under the law, including filing a

motion with the United States District Court of California, Northern District, which shall retain

jurisdiction over the Action until the Termination Date for the limited purposes of enforcement of the

terms of this Decree.  Such remedies may include an assessment of civil penalties as allowed by law.

The Parties shall be entitled to seek fees and costs incurred in any such motion, and such fees and

costs shall be awarded, pursuant to the provisions set forth in the then-applicable federal Clean Water

Act and Rule 11 of the Federal Rules of Civil Procedure, and applicable case law interpreting such provision.

16. **CSPA's Waiver and Release.**  Upon the Court Entry Date of this Decree, CSPA, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases Defendants and its officers, directors, employees, shareholders, parents, subsidiaries, and affiliates, and each of its predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives (each a "Released Defendant Party") from, and waives all claims arising from or pertaining to the Notice Letter and Complaint, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation (excluding all fees of attorneys, experts, and others, and costs per Section II above), or any other sum incurred or claimed or which could have been claimed under the Clean Water Act in this Action, for the alleged failure of Defendants to comply with the Clean Water Act at the Facility, up to the Court Entry Date.

17. **Defendants' Waiver and Release.**  Defendants, on their own behalf and on behalf of any Released Defendant Party under its control, release CSPA (and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representative) from, and waives all claims which arise from or pertain to the Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to the Action.

## IV.  <u>MISCELLANEOUS PROVISIONS</u>

18. The Parties enter into this Decree for the purpose of avoiding prolonged and costly litigation of the Clean Water Act claims in the Action.  Nothing in this Decree shall be construed as, and Defendants expressly do not intend to imply, an admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Decree constitute or be construed as an admission by Defendants of any fact, finding, conclusion, issue of law, or violation of law, nor deemed to be compliance with the General Permit or the Clean Water Act.  However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Decree.

- 13 -

19. The Decree shall be effective upon mutual execution by all Parties. The Decree shall terminate on the "Termination Date," which shall be **February 28, 2023**.

20. The Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document. An executed copy of this Decree shall be valid as an original.

21. In the event that any one of the provisions of this Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

22. The language in all parts of this Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning. This Decree shall be construed pursuant to the law of the United Sates, without regard to choice of law principles.

23. The undersigned are authorized to execute this Decree on behalf of their respective Parties and have read, understood and agreed to be bound by all of the terms and conditions of this Decree.

24. All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Decree are contained herein. This Decree and its attachments are made for the sole benefit of the Parties, and no other person or entity shall have any rights or remedies under or by reason of this Decree, unless otherwise expressly provided for therein.

25. **Notices.** Any notices or documents required or provided for by this Decree or related thereto that are to be provided to CSPA pursuant to this Decree shall be hand-delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

> William Jennings, Executive Director
> California Sportfishing Protection Alliance
> 3536 Rainer Avenue
> Stockton, California 95204
> Tel: (209) 464-5067
> E-mail: deltakeep@me.com
>
> With copies sent to:
>
>  Andrew L. Packard

- 14 -

William Carlon
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, California 94952
Tel:  (707) 782-4060
E-mail: andrew@packardlawoffices.com
       wncarlon@packardlawoffices.com

Any notices or documents required or provided for by this Decree or related thereto that are to be provided to Defendants pursuant to this Decree shall be sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below (under this email service alternative, no notice is required if no email address is listed below):

Jonathon and Wendel Trappe
PO Box 639,
Forestville, CA 95436

With copies sent to:

Sean Hungerford
HARRISON, TEMBLADOR
HUNGERFORD & JOHNSON LLP
2801 T Street
Sacramento, CA 95816
E-mail: shungerford@hthjlaw.com

Each Party shall promptly notify the other of any change in the above-listed contact information.

26.    Signatures of the Parties transmitted by facsimile or email shall be deemed binding.

27.    If for any reason the Court should decline to approve this Decree in the form presented, the Parties shall use their best efforts to work together to modify the Decree within thirty (30) days so that it is acceptable to the Court.  If the Parties are unable to modify this Decree in a mutually acceptable manner, this Decree shall become null and void.

28.    This Decree shall be deemed to have been drafted equally by the Parties, and shall not be interpreted for or against any Settling Party on the ground that any such party drafted it.

29.    This Decree and the attachments contain all of the terms and conditions agreed upon by the Parties relating to the matters covered by the Decree, and supersede any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and communications of the Parties, whether oral or written, respecting the matters covered by this Decree.  This Decree may

- 15 -

1  be amended or modified only by a writing signed by the Parties or their authorized representatives.

2  Any amendments to this Decree shall be subject to the United States Department of Justice's 45-day

3  statutory review as set forth in 33 U.S.C. § 1365(c).

4        The Parties hereto enter into this Decree and respectfully submit it to the Court for its entry.

5  APPROVED AS TO CONTENT:

6

7  Dated: _____, 2020          CALIFORNIA SPORTFISHING PROTECTION
                                         ALLIANCE

8

9                              By:    _____

10                                    William Jennings, Executive Director

11 Dated: _10/20_____, 2020          CANYON ROCK CO., INC.

12

13                             By:    _Wendel Trappe_____

14                                    Wendel Trappe, Owner

15

16 Dated: _10/20_____, 2020          WENDEL TRAPPE

17

18                             By:    _Wendel Trappe_____

19                                    Wendel Trappe

20

21 APPROVED AS TO FORM:

22

23 Dated: _____, 2020          LAW OFFICES OF ANDREW L. PACKARD

24

25                             By:    _____

26                                    Andrew L. Packard
                                      Attorneys for Plaintiff

27                                    CALIFORNIA SPORTFISHING PROTECTION
                                      ALLIANCE

28

- 16 -

be amended or modified only by a writing signed by the Parties or their authorized representatives.

Any amendments to this Decree shall be subject to the United States Department of Justice's 45-day

statutory review as set forth in 33 U.S.C. § 1365(c).

   The Parties hereto enter into this Decree and respectfully submit it to the Court for its entry.

APPROVED AS TO CONTENT:


Dated: October 20, 2020      CALIFORNIA SPORTFISHING PROTECTION
               ALLIANCE

          By: _____
             William Jennings, Executive Director


Dated: _____, 2020   CANYON ROCK CO., INC.


          By: _____
             Wendel Trappe, Owner


Dated: _____, 2020   WENDEL TRAPPE


          By: _____
             Wendel Trappe


APPROVED AS TO FORM:


Dated: _____, 2020   LAW OFFICES OF ANDREW L. PACKARD

          By: _____
             Andrew L. Packard
             Attorneys for Plaintiff
             CALIFORNIA SPORTFISHING PROTECTION
             ALLIANCE

1   Dated: _____Oct. 21___, 2020     HARRISON TEMBLADOR HUNGERFORD &
2                                    JOHNSON

3                           By: _____

4                             Sean Hungerford
5                             Attorneys for Defendants
                               CANYON ROCK, CO. INC. and
6                             WENDEL TRAPPE

7

8   Good cause appearing, **IT IS SO ORDERED.**

9   Dated: _____, 2020
10

11                        By: _____
                             Hon. Joseph  C. Spero
12                           Chief Magistrate Judge
                             Unites Stated District Court
13                           Northern District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**EXHIBIT A – Forestville Facility Site Map**

26
27
28

[PROPOSED] CONSENT DECREE            Case No. 3:20-CV-00615-JCS





**Canyon Rock Company, Inc.**
7525 HIGHWAY 116 FORESTVILLE,
CA 95436

SWPPP Site Map Vicinity &
Site Boundary
1/5/2020

**Canyon Rock Company, Inc.**
7525 HIGHWAY
116 FORESTVILLE,
CA 95436

*Legend*

Surface Stormwater Flow Direction

Discharge Location (2) (Green Valley Cr.)

Stormwater Conveyance Flow (Underground)

Stormwater Sampling Point

Hazardous Materials Storage Area

Oil Room

Drainage Area 1

Drainage Area 2

AST/ Fueling Area

Concrete/ Paved Areas

Spill Kit

Stormwater Site Map (West)

Scale: 1" ~ 170'
1/5/2020

Open Quarry Face/ Mining

Wet Pond

Drainage Area 2

Raw Materials Storage

Raw Materials Storage

Rock gravel sorting cleaning

Wet Pond

Drainage Area 1



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**EXHIBIT B – Cazadero Facility Site Map**

24
25
26
27
28



**SWPPP Site Map Vicinity & Site Boundary**
**1/5/2020**

**Canyon Rock Company, Inc.**
600 AUSTIN CREEK RD.
CAZADERO, CA 95421





**Canyon Rock Company, Inc.**
600 Austin Creek Rd.
Cazadero, CA 95421

**Stormwater Site Map**
(1/5/2020)

**Legend**

Spill Kit
Stormwater Sampling Point
Gate/ Road Access
Diesel /AST
Stormwater Conveyance (surface)

Stormwater Conveyance (subsurface)
Hazardous Material Location
Oil Room
Discharge Point
Surface Stormwater Flow Direction
Concrete/ paved surfaces

Scale: 1" ~ 140'

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT C -- CWA Notice of Violation and Intent to Sue Letter**

LAW OFFICES OF

## ANDREW L. PACKARD

245 KENTUCKY STREET, SUITE B3, PETALUMA, CA 94952
PHONE (707) 782-4060   FAX (707) 782-4062
INFO@PACKARDLAWOFFICES.COM

November 26, 2019

**VIA CERTIFIED MAIL**

Wendel Trappe, Owner                    Wendel Trappe, Owner
Canyon Rock, Co., Inc.                  7310 Highway 116
P.O. Box 639                            Forestville, CA 95436
Forestville, CA 95436

Re:    **NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE
       FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT")
       (33 U.S.C. §§ 1251 *et seq.*)**

Dear Wendel Trappe:

       This firm represents California Sportfishing Protection Alliance ("CSPA") in regard to
violations of the Clean Water Act ("the Act") occurring at Canyon Rock, Co., Inc.'s ("Canyon
Rock") rock quarries and sand and gravel operations located at 7525 Highway 116, in
Forestville, California (the "Forestville Facility") and located at 600 Austin Creek Road, in
Cazadero, California (the "Cazadero Facility"). This letter is being sent to you as the responsible
owner and operator of both enterprises, and as the registered agent for this entity. Unless
otherwise noted, Wendel Trappe and Canyon Rock shall hereinafter be collectively referred to as
"Canyon Rock." The purpose of this letter is to provide Canyon Rock with notice of the
violations of the Industrial General Permit occurring at the Forestville Facility and the Cazadero
Facility (collectively the "Facilities"), including, but not limited to, noncompliant discharges of
polluted storm water associated with industrial activities from the Facilities into local surface
waters.

       Canyon Rock is in ongoing violation of the substantive and procedural requirements of
the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, and National Pollutant Discharge Elimination
System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board
Water Quality Order No. 14-57-DWQ ("General Permit" or "Permit").[1]  Prior to July 1, 2015,
Canyon Rock's storm water discharges were regulated under Water Quality Order
No. 91-13-DWQ, as amended by Water Quality Orders 92-12-DWQ and 97-03-DWQ.

---

[1] Canyon Rock submitted a Notice of Intent ("NOI") to comply with the General Permit for the
Forestville Facility on or about June 17, 2015, and for the Cazadero Facility on June 17, 2015.
The Forestville Facility was assigned the Waste Discharge Identification ("WDID") Number 1
49I001091 and the Cazadero Facility was assigned the WDID Number 1 49I024780.

Notice of Violation and Intent To File Suit
November 26, 2019
Page 2

On July 1, 2015 the 2015 General Permit went into effect, superseding the 1997 General Permit that was operative between 1997 and June 30, 2015. The 2015 General Permit includes many of the same fundamental requirements and implements many of the same statutory requirements as the 1997 General Permit. Violation of both the 1997 and 2015 General Permit provisions is enforceable under the law. General Permit, Finding A.6.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects Canyon Rock to a penalty for all violations occurring during the period commencing five years prior to the date of the Notice Letter. These provisions of law authorize civil penalties of up to $37,500 per day per violation for all Clean Water Act violations occurring after January 12, 2009 and $54,833 per day per violation for all violations that occurred after November 2, 2015.

In addition to civil penalties, CSPA will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. § 135.2.

As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facilities. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, CSPA intends to file suit under Section 505(a) of the Act in federal court against Canyon Rock for violations of the Clean Water Act and the Permit.

## I.    Background.

### A.    California Sportfishing Protection Alliance

CSPA is a non-profit association dedicated to the preservation, protection and defense of the environment, wildlife and natural resources of California waters, including the waters into which Canyon Rock discharges polluted storm water. Members of CSPA enjoy the waters that the Facilities discharge into, including Green Valley Creek, Austin Creek, and the Russian River. Members of CSPA use and enjoy these waters for fishing, estuarine habitat and the rare, threatened and endangered species it supports, the wildlife habitat, marine habitat, and other designated beneficial uses. The discharge of pollutants from the Facilities impairs each of these uses. Further, discharges of polluted storm water from the Facilities are ongoing and continuous. Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by Canyon Rock's failure to comply with the Clean Water Act and the General Permit.

Notice of Violation and Intent To File Suit
November 26, 2019
Page 3

### B.     The Clean Water Act.

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco Bay Keeper, Inc. v. Tosco Corp*., 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants not specifically allowed by a NPDES permit is illegal. *Ecological Rights Found. v. Pacific Lumber Co*., 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342

### C.     California's General Permit for Storm Water Discharges Associated with Industrial Activities

Between 1997 and June 30, 2015, the General Permit in effect was Order No. 97-03-DWQ, which CSPA refers to as the "1997 General Permit." On July 1, 2015, pursuant to Order No. 2015-0057-DWQ the General Permit was reissued, including many of the same fundamental terms as the prior permit. For purposes of this notice letter, CSPA refers to the reissued permit as the "2015 General Permit." Accordingly, Canyon Rock is liable for violations of the 1997 General Permit and ongoing violations of the 2015 General Permit, and civil penalties and injunctive relief are available remedies. *See Illinois v. Outboard Marine, Inc.*, 680 F.2d 473, 480-81 (7th Cir. 1982) (relief granted for violations of an expire permit); *Sierra Club v. Aluminum Co. of Am.*, 585 F. Supp. 842, 853-54 (N.D.N.Y. 1984) (holding that the Clean Water Act's legislative intent and public policy favor allowing penalties for violations of an expired permit); *Pub. Interest Research Group of N.J. v. Carter-Wallace, Inc.*, 684 F. Supp. 115, 121-22 (D.N.J. 1988) ("Limitations of an expired permit, when those limitations have been transferred unchanged to the newly issued permit, may be viewed as currently in effect").

Industrial facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). 1997 General Permit, Provision E.1; 2015 General Permit, Standard Condition XXI.A. These facilities must file their NOIs before the initiation of industrial operations. *Id.*

Notice of Violation and Intent To File Suit
November 26, 2019
Page 4

Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA.

The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

### D.    Canyon Rock's Forestville Facility

Information available to CSPA indicates that Canyon Rock's industrial activities at the approximately 80-acre Forestville Facility include, but are not limited to: aggregate and rock material crushing, processing, screening, stockpiling and recycling, and producing ready-mix concrete. The Forestville Facility also includes a rock quarry, as well as a shop, fueling area, and a network of roads that provide connectivity between the various industrial areas. The industrial activities at the Forestville Facility fall under Standard Industrial Classification ("SIC") Code 1442 ("Construction Sand and Gravel") and 3273 ("Read-Mixed Concrete").

Canyon Rock collects and discharges storm water associated with industrial activities at the Forestville Facility through at least two (2) discharge points into Green Valley Creek, which drains to the Russian River. Green Valley Creek and the Russian River are waters of the United States within the meaning of the Clean Water Act.

According to the 2014 and 2016 303(d) List of Impaired Water Bodies, the Russian River Hydrologic Unit, Lower Russian River Hydrologic Area, Guerneville Hydrologic Sub-Area, Green Valley Creek watershed downstream of the Forestville Facility is impaired for: Indicator Bacteria, and Dissolved Oxygen.[2] Polluted discharges from industrial sites, such as the Forestville Facility, contribute to the degradation of these already impaired surface waters and aquatic-dependent wildlife.

The areas of industrial activity at the Forestville Facility are sources of pollutants. The General Permit requires Canyon Rock to analyze storm water samples for TSS, pH, and Oil and Grease. 1997 General Permit, Section B.5.c.i; 2015 General Permit, Section XI.B.6. Facilities under SIC Code 1442 must also analyze storm water samples for Nitrate plus Nitrite Nitrogen ("N+N") and facilities under SIC Code 3273 must analyze storm water samples for iron. 1997 General Permit, Tables 1-2; 2015 General Permit Tables 1-2.

### E.    Canyon Rock's Cazadero Facility

Information available to CSPA indicates that Canyon Rock's industrial activities at the approximately 120-acre Cazadero Facility are similar to the Forestville Facility and include, but

---

[2] 2014 and 2016 Integrated Report – All Assessed Waters, *available at* http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2012.shtml (last accessed November 22, 2017).

Notice of Violation and Intent To File Suit
November 26, 2019
Page 5

are not limited to: aggregate and rock material crushing, and processing, screening, stockpiling and recycling. Industrial activities at the Cazadero Facility also include rock quarrying on the open faces of rock east of Austin Creek Road, as well as a shop, fueling area, and a network of roads that provide connectivity between the various industrial areas. The industrial activities at the Cazadero Facility fall under Standard Industrial Classification ("SIC") Code 1442 ("Construction Sand and Gravel").

Canyon Rock collects and discharges storm water associated with industrial activities at the Cazadero Facility through at least two (2) discharge points into Austin Creek, which drains to the Russian River. Austin Creek and the Russian River are waters of the United States within the meaning of the Clean Water Act.

According to the 2014 and 2016 303(d) List of Impaired Water Bodies, the Russian River Hydrologic Unit, Lower Russian River Hydrologic Area, Austin Creek Sub-Area downstream of the Cazadero Facility is impaired for: Sedimentation/Siltation, and Temperature. Polluted discharges from industrial sites, such as the Cazadero Facility, contribute to the degradation of these already impaired surface waters and aquatic-dependent wildlife.

The areas of industrial activity at the Cazadero Facility are sources of pollutants. The General Permit requires Canyon Rock to analyze storm water samples for TSS, pH, and Oil and Grease. 1997 General Permit, Section B.5.c.i; 2015 General Permit, Section XI.B.6. Facilities under SIC Code 1442 must also analyze storm water samples for Nitrate plus Nitrite Nitrogen ("N+N"). 1997 General Permit, Tables 1-2; 2015 General Permit Tables 1-2.

## II.   Canyon Rock's Violations of the Act and Permit.

Based on its review of available public documents, CSPA is informed and believes that Canyon Rock, through its operation of the Facilities, is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit. These violations are ongoing and continuous. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Canyon Rock is subject to penalties for violations of the Act since November 26, 2014.

### A.   Canyon Rock Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations and Effluent Limitations.

Canyon Rock's storm water sampling results provide conclusive evidence of Canyon Rock's failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations at either of its Facilities. Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

### 1.   Applicable Water Quality Standards.

Notice of Violation and Intent To File Suit
November 26, 2019
Page 6

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.  1997 General Permit, Discharge Prohibition A.2; 2015 General Permit, Discharge Prohibition III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies.  1997 General Permit, Receiving Water Limitation C.2; 2015 General Permit, Discharge Prohibition III.D.  Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water.  1997 General Permit, Receiving Water Limitations C.1, C.2; 2015 General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations.  1997 General Permit, p. VII; 2015 General Permit, Special Condition XX.B.  The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards.  *Id.*

The *Water Quality Control Plan for the North Coast Region (Revised May 2011)* ("Basin Plan") sets forth water quality standards and prohibitions applicable to Canyon Rock's storm water discharges from its Facilities.  The Basin Plan identifies present and potential beneficial uses for the Russian River Hydrologic Unit, which include municipal and domestic water supply, hydropower generation, agricultural supply, industrial service supply, navigation, wildlife habitat, warm freshwater habitat, cold freshwater habitat, warm and cold spawning, and contact and non-contact water recreation.

## 2.    Applicable Effluent Limitations.

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants.  1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent Limitation V.A.  Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform.  40 C.F.R. § 401.16.  All other pollutants are either toxic or nonconventional.  40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT.  *Santa Monica Baykeeper v. Kramer Metals,* 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); 1997 General Permit, Effluent Limitations B.5-6; 2015 General Permit, Exceedance Response Action XII.A.

Notice of Violation and Intent To File Suit
November 26, 2019
Page 7

The following EPA benchmarks have been established for pollutants discharged by Canyon Rock: Total Suspended Solids – 100 mg/L; Oil & Grease – 15.0 mg/L; Iron – 1.0 mg/L; pH – 6.0-9.0 s.u. and Nitrate plus Nitrite Nitrogen – 0.68 mg/L.

### 3.    Canyon Rock's Storm Water Sample Results

The following discharges of pollutants from the Forestville Facility have violated the discharge prohibitions, receiving water limitations and effluent limitations of the Permit:

### a.    Discharge of Storm Water Containing Total Suspended Solids (TSS) at Concentrations in Excess of Applicable EPA Benchmark Value

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|------|-----------------|-----------|-----------------------------------|----------------------------|
| 3/1/2018 | CRF-W | TSS | 110 | 100 |
| 1/9/2018 | CRF-W | TSS | 130 | 100 |

### b.    Discharge of Storm Water Containing Iron (Fe) at Concentrations in Excess of Applicable EPA Benchmark Values

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|------|-----------------|-----------|-----------------------------------|----------------------------|
| 3/1/2018 | CRF-W | Fe | 1.4 | 1.00 |
| 3/1/2018 | CRF-N | Fe | 2 | 1.00 |
| 1/9/2018 | CRF-W | Fe | 1.2 | 1.00 |
| 3/22/2017 | CRF-W | Fe | 2 | 1.00 |
| 3/22/2017 | CRF-N | Fe | 1.5 | 1.00 |
| 3/6/2017 | CRF-W | Fe | 2.6 | 1.00 |

The following discharges of pollutants from the Cazadero Facility have violated the discharge prohibitions, receiving water limitations and effluent limitations of the Permit:

### c.    Discharge of Storm Water Containing Iron (Fe) at Concentrations in Excess of Applicable EPA Benchmark Value

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|------|-----------------|-----------|-----------------------------------|----------------------------|
| 3/20/2019 | CRC-1 | Fe | 1.5 | 1.00 |
| 12/18/2018 | CRC-1 | Fe | 2 | 1.00 |
| 3/21/2018 | CRC-1 | Fe | 2.7 | 1.00 |
| 3/21/2018 | CRC-2 | Fe | 4.8 | 1.00 |
| 3/2/2018 | CRC-1 | Fe | 2.6 | 1.00 |

Notice of Violation and Intent To File Suit
November 26, 2019
Page 8

| 3/2/2018 | CRC-2 | Fe | 6.5 | 1.00 |
|---|---|---|---|---|
| 1/9/2018 | CRC-2 | Fe | 2.4 | 1.00 |
| 3/22/2017 | CRC-1 | Fe | 2.1 | 1.00 |
| 3/22/2017 | CRC-2 | Fe | 1.6 | 1.00 |
| 3/6/2017 | CRC-1 | Fe | 2.2 | 1.00 |
| 3/6/2017 | CRC-2 | Fe | 5.1 | 1.00 |
| 4/22/2016 | CRC-1 | Fe | 17 | 1.00 |
| 4/22/2016 | CRC-2 | Fe | 5.7 | 1.00 |
| 3/3/2016 | CRC-1 | Fe | 2.3 | 1.00 |
| 2/18/2016 | CRC-1 | Fe | 2.4 | 1.00 |
| 12/22/2015 | CRC-1 | Fe | 6.6 | 1.00 |
| 12/22/2015 | CRC-2 | Fe | 2.4 | 1.00 |
| 12/5/2014 | CYU-U | Fe | 1.9 | 1.00 |
| 12/5/2014 | CYU-L | Fe | 5.9 | 1.00 |

       **d.**     **Discharge of Storm Water Containing Total Suspended Solids (TSS) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 3/2/2018 | CRC-2 | TSS | 130 | 100 |
| 4/22/2016 | CRC-1 | TSS | 190 | 100 |

       **e.**     **Canyon Rock 's Sample Results Are Evidence of Violations of the General Permit**

Canyon Rock's sample results demonstrate violations of the Permit's discharge prohibitions, receiving water limitations and effluent limitations set forth above.  CSPA is informed and believes that Canyon Rock has known that its storm water contains pollutants at levels exceeding General Permit standards since at least November 26, 2012.

CSPA alleges that such violations occur each time storm water discharges from the Facility.  Attachment A hereto, sets forth the specific rain dates on which CSPA alleges that Canyon Rock has discharged storm water containing impermissible levels of TSS, Fe, and N+N in violation of the General Permit.  1997 General Permit, Discharge Prohibition A.2, Receiving Water Limitations C.1 and C.2; 2015 General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B.

       **4.**     **Canyon Rock Has Failed to Implement BAT and BCT**

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water

Notice of Violation and Intent To File Suit
November 26, 2019
Page 9

discharges.  1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent
Limitation V.A.  To meet the BAT/BCT standard, dischargers must implement minimum BMPs
and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions
where necessary to reduce or prevent pollutants in discharges.  *See* 1997 General Permit,
Sections A.8.a-b; 2015 General Permit, Sections X.H.1-2.

Canyon Rock has failed to implement the minimum BMPs required by the General
Permit, including: good housekeeping requirements; preventive maintenance requirements; spill
and leak prevention and response requirements; material handling and waste management
requirements; erosion and sediment controls; employee training and quality assurance; and
record keeping.  Permit, Section X.H.1(a-g).

Canyon Rock has further failed to implement advanced BMPs necessary to reduce or
prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards,
including:  exposure minimization BMPs; containment and discharge reduction BMPs; treatment
control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent
limitations.  1997 General Permit, Section A.8.b; 2015 General Permit, Sections X.H.2.

Each day that Canyon Rock  have failed to develop and implement BAT and BCT at the
Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of
the Act, 33 U.S.C. § 1311(a).  Canyon Rock has been in violation of the BAT and BCT
requirements at its Facilities every day since at least November 26, 2012.

### 5.    Canyon Rock Has Failed to Implement an Adequate Monitoring Implementation Plan.

The General Permit requires dischargers to implement a Monitoring Implementation
Plan.  Permit, Section X.I.  As part of their monitoring plan, dischargers must identify all storm
water discharge locations.  Permit, Section X.I.2.  Dischargers must then conduct monthly visual
observations of each drainage area, as well as visual observations during discharge sampling
events.  General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events
within the first half of each reporting year (July 1 to December 31) and two (2) storm events
during the second half of each reporting year (January 1 to June 3).  General Permit, Section
XI.B.  Section XI.B requires dischargers to sample and analyze during the wet season for basic
parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain
industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants
likely to be in the storm water discharged from the facility based on the pollutant source
assessment.  Permit, Section XI.B.6.  Dischargers must submit all sampling and analytical results
via SMARTS within thirty (30) days of obtaining all results for each sampling event.  Section
XI.B.11.

Canyon Rock has failed to develop and implement an adequate Monitoring
Implementation Plan for each of its Facilities.  For example, Canyon Rock has failed to monitor

Notice of Violation and Intent To File Suit
November 26, 2019
Page 10

for every potential pollutant that is likely to be present at its Facilities. In addition, Canyon Rock has failed to collect the required number of samples for each reporting period. Canyon Rock has also failed to monitor every discharge location of storm water associated with industrial activities at its Facilities. Each day that Canyon Rock has failed to develop and implement adequate Monitoring Implementation Plans is a separate and distinct violation of the Act and Permit. Canyon Rock has been in violation of the Monitoring Implementation Plan requirements every day since at least November 26, 2012.

<h3 style="text-align:center">6.    Canyon Rock Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.</h3>

The General Permit requires dischargers to develop and implement a site-specific SWPPP. 1997 General Permit, Section A.1; 2015 General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year. 2015 General Permit, Section X.B; see also 1997 General permit, Section A.

CSPA's investigation indicates that Canyon Rock has been operating with an inadequately developed and implemented SWPPP in violation of General Permit requirements. For example, Canyon Rock's site maps at both Facilities are wholly inadequate and lack all required information. Furthermore, Canyon Rock's use of a generic CASQA template at both Facilities does not reflect a site-specific approach to storm water management. The generic SWPPPs lack requisite details about specific minimum and advanced BMPs at both Facilities. Canyon Rock has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the Facility's numerous continuing effluent limitation violations.

Each day Canyon Rock failed to develop and implement adequate SWPPPs at each of its Facilities is a violation of the General Permit at each Facility. The SWPPP violations described above were at all times in violation of Section A of the 1997 General Permit, and Section X of the 2015 General Permit. Canyon Rock has been in violation of these requirements at its Facilities every day since at least November 26, 2012.

<h3 style="text-align:center">6.    Canyon Rock Has Failed to File Timely, True and Correct Reports.</h3>

Section XVI. of the Permit requires dischargers to submit an Annual Report by July 15th

Notice of Violation and Intent To File Suit
November 26, 2019
Page 11

of each reporting year to the Regional Board. The Annual Report must be signed and certified by a discharger's Legally Responsible Person, or Duly Authorized Representative. Permit, Sections XVI.A, XXI.K. The Annual Report must include a compliance checklist, certifying compliance with the General Permit and an explanation of any non-compliance. Permit, Section XVI.B.

CSPA's investigations indicate that Canyon Rock has submitted incomplete Annual Reports and purported to comply with the Permit despite significant noncompliance at its Facilities.

## III.    Persons Responsible for the Violations.

CSPA puts Canyon Rock on notice that they are the persons and entities responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA puts Canyon Rock on formal notice that it intends to include those persons in this action.

## IV.    Name and Address of Noticing Parties.

The name, address and telephone number of each of the noticing parties is as follows:

Bill Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainer Avenue
Stockton, CA 95204
(209) 464-5067

## V.    Counsel.

CSPA has retained legal counsel to represent it in this matter. Please direct all communications to:

Andrew L. Packard
William N. Carlon
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
(707) 782-4060
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

## VI.    Conclusion

CSPA believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against Canyon

Notice of Violation and Intent To File Suit
November 26, 2019
Page 12

Rock and their agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

William N. Carlon
Law Offices of Andrew L. Packard
Counsel for CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

Notice of Violation and Intent To File Suit
 November 26, 2019
Page 13

## **SERVICE LIST**

**VIA CERTIFIED MAIL**

Andrew Wheeler, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Mike Stoker, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

William Barr, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Matthias St. John, Executive Officer
North Coast Regional Water Quality Control Board
5550 Skylane Boulevard Suite A
Santa Rosa, CA 95403

**ATTACHMENT A**
**Notice of Intent to File Suit, Canyon Rock**
**Significant Rain Events,* November 26, 2014 – November 26, 2019**

| | | | |
|---|---|---|---|
| 11/20/2014 | 12/11/2015 | 10/4/2016 | 2/7/2017 |
| 11/21/2014 | 12/13/2015 | 10/25/2016 | 2/8/2017 |
| 11/22/2014 | 12/18/2015 | 10/26/2016 | 2/9/2017 |
| 11/29/2014 | 12/22/2015 | 10/28/2016 | 2/10/2017 |
| 11/30/2014 | 12/24/2015 | 10/29/2016 | 2/16/2017 |
| 12/1/2014 | 1/4/2016 | 10/30/2016 | 2/17/2017 |
| 12/2/2014 | 1/5/2016 | 10/31/2016 | 2/18/2017 |
| 12/3/2014 | 1/6/2016 | 11/1/2016 | 2/19/2017 |
| 12/4/2014 | 1/9/2016 | 11/19/2016 | 2/20/2017 |
| 12/5/2014 | 1/10/2016 | 11/20/2016 | 2/21/2017 |
| 12/6/2014 | 1/13/2016 | 11/23/2016 | 2/22/2017 |
| 12/9/2014 | 1/14/2016 | 11/26/2016 | 3/5/2017 |
| 12/11/2014 | 1/15/2016 | 11/27/2016 | 3/6/2017 |
| 12/12/2014 | 1/16/2016 | 11/28/2016 | 3/7/2017 |
| 12/13/2014 | 1/18/2016 | 12/8/2016 | 3/21/2017 |
| 12/15/2014 | 1/19/2016 | 12/9/2016 | 3/22/2017 |
| 12/16/2014 | 1/20/2016 | 12/10/2016 | 3/24/2017 |
| 12/17/2014 | 1/22/2016 | 12/14/2016 | 3/25/2017 |
| 12/18/2014 | 1/23/2016 | 12/15/2016 | 3/27/2017 |
| 12/19/2014 | 1/24/2016 | 12/16/2016 | 4/7/2017 |
| 12/21/2014 | 1/29/2016 | 12/23/2016 | 4/8/2017 |
| 1/17/2015 | 1/30/2016 | 12/24/2016 | 4/9/2017 |
| 2/6/2015 | 2/18/2016 | 1/3/2017 | 4/12/2017 |
| 2/7/2015 | 2/19/2016 | 1/4/2017 | 4/13/2017 |
| 2/8/2015 | 2/20/2016 | 1/5/2017 | 4/17/2017 |
| 2/9/2015 | 3/3/2016 | 1/7/2017 | 4/18/2017 |
| 4/6/2015 | 3/4/2016 | 1/8/2017 | 4/20/2017 |
| 4/7/2015 | 3/5/2016 | 1/9/2017 | 6/8/2017 |
| 4/8/2015 | 3/12/2016 | 1/10/2017 | 6/9/2017 |
| 4/25/2015 | 3/13/2016 | 1/11/2017 | 10/20/2017 |
| 9/17/2015 | 3/14/2016 | 1/12/2017 | 11/4/2017 |
| 10/28/2015 | 3/21/2016 | 1/19/2017 | 11/9/2017 |
| 11/2/2015 | 3/22/2016 | 1/20/2017 | 11/10/2017 |
| 11/9/2015 | 4/9/2016 | 1/21/2017 | 11/11/2017 |
| 11/10/2015 | 4/10/2016 | 1/22/2017 | 11/13/2017 |
| 11/15/2015 | 4/14/2016 | 1/23/2017 | 11/14/2017 |
| 11/25/2015 | 4/22/2016 | 1/24/2017 | 11/15/2017 |
| 12/4/2015 | 4/23/2016 | 2/2/2017 | 11/16/2017 |
| 12/6/2015 | 5/8/2016 | 2/3/2017 | 11/20/2017 |
| 12/7/2015 | 6/18/2016 | 2/4/2017 | 11/21/2017 |
| 12/10/2015 | 10/3/2016 | 2/6/2017 | 11/26/2017 |

* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

**ATTACHMENT A**
**Notice of Intent to File Suit, Canyon Rock**
**Significant Rain Events,\* November 25, 2014 – November 25, 2019**

| | | |
|---|---|---|
| 11/27/2017 | 12/1/2018 | 3/10/2019 |
| 1/4/2018 | 12/5/2018 | 3/20/2019 |
| 1/5/2018 | 12/15/2018 | 3/21/2019 |
| 1/6/2018 | 12/16/2018 | 3/22/2019 |
| 1/8/2018 | 12/17/2018 | 3/23/2019 |
| 1/9/2018 | 12/19/2018 | 3/26/2019 |
| 1/16/2018 | 12/21/2018 | 3/27/2019 |
| 1/18/2018 | 12/25/2018 | 3/28/2019 |
| 1/19/2018 | 1/6/2019 | 3/29/2019 |
| 1/22/2018 | 1/7/2019 | 4/5/2019 |
| 1/25/2018 | 1/9/2019 | 4/6/2019 |
| 2/26/2018 | 1/10/2019 | 4/7/2019 |
| 3/1/2018 | 1/12/2019 | 4/9/2019 |
| 3/2/2018 | 1/15/2019 | 4/16/2019 |
| 3/3/2018 | 1/16/2019 | 5/15/2019 |
| 3/4/2018 | 1/17/2019 | 5/16/2019 |
| 3/8/2018 | 1/18/2019 | 5/17/2019 |
| 3/13/2018 | 1/19/2019 | 5/19/2019 |
| 3/14/2018 | 1/20/2019 | 5/20/2019 |
| 3/15/2018 | 1/21/2019 | 5/21/2019 |
| 3/16/2018 | 1/31/2019 | |
| 3/17/2018 | 2/2/2019 | |
| 3/21/2018 | 2/3/2019 | |
| 3/24/2018 | 2/4/2019 | |
| 3/25/2018 | 2/5/2019 | |
| 4/6/2018 | 2/9/2019 | |
| 4/7/2018 | 2/10/2019 | |
| 4/12/2018 | 2/12/2019 | |
| 4/13/2018 | 2/13/2019 | |
| 4/16/2018 | 2/14/2019 | |
| 4/17/2018 | 2/15/2019 | |
| 9/30/2018 | 2/16/2019 | |
| 10/2/2018 | 2/17/2019 | |
| 10/3/2018 | 2/26/2019 | |
| 11/21/2018 | 2/27/2019 | |
| 11/22/2018 | 2/28/2019 | |
| 11/23/2018 | 3/2/2019 | |
| 11/24/2018 | 3/3/2019 | |
| 11/28/2018 | 3/6/2019 | |
| 11/29/2018 | 3/7/2019 | |
| 11/30/2018 | 3/9/2019 | |

\* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23                    **EXHIBIT D -- Wash Plant Area**
24
25
26
27
28



Pond 5

## EXPLANATION





☆  Proposed cover and approximate location of overhang over filter press/mud unloading area

☆  Rock wash drop inlet (DI), connected to underground pipeline directing runoff water to underground tank for wash cycle system

☆  Current stormwater retention pond  (Pond 5)

▬  Proposed complete (no open spacing) concrete block berm to direct surface water runoff to enter retention pond from the west-southwest bank

▬  Sequential surface water breaks using straw wattles/sand for sediment removal

→  Surface water flow direction

| | |
|---|---|
| **Gp** Environmental Solutions, LLC | CLIENT:<br>Canyon Rock<br>PROJECT MANAGER:<br>GAP<br>DRAFTED BY:<br>DLB<br>DATE:<br>SEPT 2020 |

**WASH PLANT AREA**

*SWPPP*

*Canyon Rock, Inc.*

7525 Highway 116
Forestville, CA 95436

**EXHIBIT**

**D**

1784  Northstar  Drive,  Petaluma,  CA 94954
707-775-5055          greg@gpenviro.com

PERIMETER VINYL
CURTAIN PANELS

36" R-PANEL
METAL SHEETING

EXISTING PRESS
PLATFORM STRUCTURE

29'-11"

PROPOSED PLATFORM
ROOFING STRUCTURE

PERIMETER VINYL
CURTAIN PANELS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**EXHIBIT E – Truck Wash Area**

25
26
27
28



## EXPLANATION



☆    Current stormwater runoff retention ponds and pump systems as needed

☆    Proposed two-stall concrete washout pad, bermed on three sides, front curb and outlets to new proposed washout pond

☆    Proposed primary option for sloped concrete washout pond for loader/tractor cleanout and maintenenance with curb on north end to prevent stormwater run-in.  Aboveground tank (AST) for wash water containment after settling in concrete pond (for re-use).

☆    Second option area for proposed washout pond and AST should concrete beneath primary option be encountered which would inhibit excavation.

→    Surface water flow direction



| | CLIENT:<br>　Canyon Rock<br>PROJECT MANAGER:<br>　GAP<br>DRAFTED BY:<br>　DLB<br>DATE:<br>　SEPT 2020 | **TRUCK WASH AREA**<br><br>*SWPPP*<br><br>***Canyon Rock, Inc.***<br>7525 Highway 116<br>Forestville, CA 95436 | **EXHIBIT**<br><br>**E** |
|---|---|---|---|

**Gp** since 2016 **Environmental Solutions, LLC**
1784 Northstar Drive, Petaluma, CA 94954
707-775-5055    greg@gpenviro.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**EXHIBIT F – Concrete Batch Plant**

25
26
27
28



## EXPLANATION

 

0        50
scale    feet

| | |
|---|---|
| ☆ | Current stormwater runoff retention pond (no outlet) |
| ← | Current concrete cutout/berm located in sloped enry/exit to batch plant loading areas.  Water running off loading area is captured and directed toward small retention pond to the west. |
| ～ | Proposed 6-inch high earthen berm to prevent potential stormwater run-in from the north |
| → | Surface water flow direction |



Gp Environmental Solutions, LLC
since 2016
1784 Northstar Drive, Petaluma, CA 94954
707-775-5055          greg@gpenviro.com

CLIENT:
    Canyon Rock
PROJECT MANAGER:
    GAP
DRAFTED BY:
    DLB
DATE:
    SEPT 2020

**BATCH PLANT AREA**

*SWPPP*

*Canyon Rock, Inc.*

7525 Highway 116
Forestville, CA 95436

**EXHIBIT**

**F**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
**EXHIBIT G – Boneyard Improvements**
25
26
27
28



Green Valley Creek

2

1

## EXPLANATION





☆ Current Stormwater Retention Pond

☆ Proposed post recycling/disposal equipment storage area to be graded, and perimeter bermed, to control and direct surface water runoff

⎟⎟⎟ Runoff control pass through with specialty wattles for sediment and metals removal

→ Proposed surface water runoff direction

| | |
|---|---|
| **Gp** since 2016 Environmental Solutions, LLC 1784 Northstar Drive, Petaluma, CA 94954 707-775-5055     greg@gpenviro.com | CLIENT: Canyon Rock PROJECT MANAGER: GAP DRAFTED BY: DLB DATE: SEPT 2020 |

**BONEYARD AREA**

*SWPPP*

*Canyon Rock, Inc.*

7525 Highway 116
Forestville, CA 95436

**EXHIBIT**

**G**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**EXHIBIT H – Detention Basin/Sampling Point at Cazadero Faciliy**

24
25
26
27
28

**Canyon Rock Company, Inc.**
600 Austin Creek Rd.
Cazadero, CA 95421

EXHIBIT H

**Stormwater Site Map   September 2020**

Scale: 1" ~ 140'

**Legend**

Spill Kit
Stormwater Sampling Point
Gate/ Road Access
Diesel/ AST
Stormwater Conveyance (surface)

Stormwater Conveyance (subsurface)
Hazardous Material Location
Discharge Point
Surface Stormwater Flow Direction
Concrete/ paved surfaces
Oil Room

Drainage Area 2

Drainage Area 1

Drainage Area 3

Open Quarry Face/ Mining

Open Quarry Face/ Mining

Rock/ gravel sorting

Wet Pond

Wet Pond

Wet/ Infiltration Pond

Wet Pond

Wet Pond

Raw Materials Storage

Raw Materials Storage

Raw Materials Storage

Raw Materials Storage

Raw Materials Storage

Concrete Batch Plant

Batch Plant (abandoned)

Tractor Parking

Tire Scraper

Office

Scale / Office

Drop Inlet

From non-industrial area NW of active mining area)

Austin Creek Rd.

Main Creek Rd.

Austin Creek Rd.

Vault/ Conveyance/ Access

Summer creek access (formed in winter)

Cazadero Hwy.

Cazadero Hwy.

Austin Creek

Austin Creek

Austin Creek

CRC-1

CRC-1 (Current)

D-1

D-2

**EXHIBIT I**

| Parameter | Test Method | Reporting Units | Evaluation Level | Instantaneous Maximum NAL, If Applicable |
|---|---|---|---|---|
| pH | See Section XI.C.2 of the General Permit | pH units | N/A | Less than 6.0 Greater than 9.0 |
| Total Suspended Solids | SM 2540-D | mg/L | 100 | 400 |
| Oil & Grease | EPA 1664A | mg/L | 15 | 25 |
| TPH – Diesel[2] | EPA 8015M | ug/L | N/A | |
| Iron | EPA 200.7 | mg/L | 1.0 | |
| Turbidity | [Nephelometer] | NTU | 25 NTU | |
| Nitrate plus Nitrite Nitrogen | SM4500-NO3-E | mg/L as N | 0.68 | |

SM – Standard Methods for the Examination of Water and Wastewater, 18th edition
EPA – U.S. EPA test methods

---

[2] TPH-Diesel shall be removed from the Exhibit I list of sampling parameters if four consecutive QSE samples show "non-detect" results for this parameter at both discharge points at the Forestville Facility.